```
                     UNITED STATES DISTRICT COURT

                         DISTRICT OF ARIZONA


United States of America,      )
                               )
              Plaintiff,       )
                               )
vs.                            )   CR-21-00522-TUC-JGZ-EJM
                               )
David Rogelio Rodriguez, Jr.,  )
                               )
              Defendant.       )   Tucson, Arizona
_____)   March 15, 2022


                     TRANSCRIPT OF SENTENCING
              BEFORE THE HONORABLE JENNIFER G. ZIPPS
                   UNITED STATES DISTRICT JUDGE


For the Plaintiff:
     Mr. Matthew G. Eltringham
     U.S. Attorney's Office
     405 West Congress Street, Suite 4800
     Tucson, AZ  85701

For the Defendant:
     Mr. Jay A. Marble
     Federal Public Defender's Office
     407 West Congress Street, Suite 501
     Tucson, AZ  85701




Proceedings recorded by mechanical stenography, transcript
produced by computer.

                  Aaron H. LaDuke, RMR, CRR
                Federal Official Court Reporter
                      405 W. Congress St.
                    Tucson, Arizona  85701
```

|   |   |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE CLERK: In criminal matter 21-522, United States |
| 3 | of America versus David Rogelio Rodriguez, Jr., on for |
| 4 | sentencing. |
| 5 | Counsel, please state your appearances. |
| 6 | MR. ELTRINGHAM: Good morning, Your Honor. Matthew |
| 7 | Eltringham on behalf of the United States. |
| 8 | THE COURT: Good morning. |
| 9 | MR. MARBLE: Good morning, Your Honor. Jay Marble |
| 10 | appearing on behalf of David Rogelio Rodriguez, Jr. He's |
| 11 | present, in custody, Your Honor. He's an English speaker. |
| 12 | THE COURT: Thank you. Good morning. |
| 13 | THE DEFENDANT: Good morning. |
| 14 | THE COURT: Mr. Marble, have you reviewed the |
| 15 | presentence investigation report with Mr. Rodriguez? |
| 16 | MR. MARBLE: Yes, Judge. |
| 17 | THE COURT: Mr. Rodriguez, have you been satisfied |
| 18 | with the services of your attorney? |
| 19 | THE DEFENDANT: Yes, ma'am. |
| 20 | THE COURT: Mr. Rodriguez, you pled guilty to all the |
| 21 | counts in the indictment, eight counts. Those counts included |
| 22 | conspiracy to possess with intent to distribute cocaine, |
| 23 | fentanyl, and methamphetamine; possession with intent to |
| 24 | distribute cocaine; possession with intent to distribute |
| 25 | fentanyl; possession with intent to distribute |

```
 1  methamphetamine; conspiracy to import cocaine, fentanyl, and
 2  methamphetamine; importation of cocaine; importation of
 3  fentanyl; and importation of methamphetamine, correct?
 4          THE DEFENDANT:  Yes, Your Honor.
 5          THE COURT:  All right.  Based on your plea to those
 6  offenses, the Court does find you guilty of those eight
 7  counts.
 8      I have reviewed the presentence investigation report, and
 9  I'm going to adopt the guideline calculation in that report.
10  There was an objection regarding safety valve which has been
11  resolved, and there was an objection regarding minor role
12  which I will overrule based on the circumstances in this case
13  and the number of transactions that were involved, in looking
14  at the totality of all of the circumstances.  Therefore, the
15  Court finds that the applicable sentencing guideline range is
16  168 to 210 months of imprisonment.
17      Counsel, let me make sure that includes the statutory
18  safety valve.  Counsel, am I correct that that does include
19  the statutory safety valve?
20          MR. MARBLE:  I believe the adjusted range on -- I'm
21  looking at page 19, Judge, of the presentence report -- would
22  be level 33, Category III.  I believe that includes a
23  two-level variance for --
24          THE COURT:  Thank you.
25          MR. MARBLE:  Excuse me.  The asterisks on that.
```

1    THE COURT:  The 135 to 168.

2    MR. MARBLE:  135 to 168.

3    THE COURT:  And, Mr. Eltringham, are you in agreement
4 with that as well?

5    MR. ELTRINGHAM:  Yes, Your Honor.

6    THE COURT:  All right.  So I'm going to find that the
7 applicable range then is 135 to 168, and that includes the
8 First Step Act statutory safety valve.

9    I have read the memoranda that were submitted.

10   Mr. Marble.

11   MR. MARBLE:  Judge, can I make just a brief record
12 regarding minor role?

13   THE COURT:  You may.

14   MR. MARBLE:  Just for the record, Judge.  I
15 understand your ruling.  I just want to point out to the Court
16 that I believe that Mr. Rodriguez still qualifies for safety
17 valve even despite the number of times that he admitted to it.

18   This is a situation where he was honest with the
19 authorities when he was arrested, and I don't think the fact
20 that there's multiple times should take him away from minor
21 role because, really, minor role is whether he was a planner
22 or organizer, whether he was a decision maker, and really what
23 he gained, stood to gain from his participation in this
24 offense.  And I think on all levels the couriers are the
25 lowest level of the totem pole.  They're put at risk for

1  crossing the border.  They're insulated from decision-making
2  responsibilities and the organization and structure, the
3  structure of the organization, because the other people don't
4  want them to be able to point them out.
5     So despite the fact that he crossed several times and was
6  honest about it, I don't think that changes the fact that he's
7  a courier.  A courier alone doesn't entitle him to minor role,
8  but I think under the circumstances his role was -- none of
9  the factors really fits.  He probably stood to gain a couple
10 thousand dollars when the amount of drugs he was crossing was
11 probably tens of thousands or hundreds of thousands of
12 dollars.  He didn't get to decide what he was given, and he
13 didn't understand the structure.
14    So for all those reasons, just for the record, I would
15 like to make -- we would ask the Court -- that was our
16 objection regarding minor role.
17          THE COURT:  Let me ask you, Mr. Marble, I don't
18 dispute that your client admitted that he had been involved in
19 smuggling on prior occasions.  When I read the offense
20 conduct, my impression was that the agents discovered, by
21 looking back at prior x-rays of the defendant's vehicle, that
22 there had been previous dates where drugs had been smuggled
23 based on similar anomalies.
24          MR. MARBLE:  I think what they do is after they find
25 somebody and they check their crossing record, then they can

1  scan the x-ray portal.  They take x-rays I think when people
2  go through the border.  They scan the x-ray portals and they
3  can look for anomalies.  Obviously, they went back and did
4  that.
5      So I don't think we're -- we're not in disagreement that
6  there were other instances.  Our position is other instances
7  just establish that he is a courier.  While that's not --
8  while we still have the burden to show by a preponderance that
9  he is entitled to minor role, there's no other evidence to
10 support that he was anything more than a courier, and that's
11 really what he said he was.
12     He was doing it because of his financial situation,
13 because he just found out about his health situation.  He
14 wasn't, he wasn't, he wasn't any higher than a courier.  I
15 don't think there's anything that establishes that.
16     And we think that, looking at the factors that the
17 Sentencing Commission set out under 3B1.2, he wasn't a
18 decision maker.  He wasn't really involved in the structure of
19 the organization.  He couldn't control what he was given.  You
20 know, he wasn't given the option of, here, we want you to
21 cross marijuana.  They gave him the drugs, they told him what
22 to do, so for those reasons.
23          THE COURT:  And I understand the distinction you're
24 making.  The reason I was asking is I feel like there's a
25 difference sometimes when agents are questioning someone after

1  the offense, and the only reason that we're aware that they
2  have been involved in trafficking previously is based on the
3  person's own honesty --
4          MR. MARBLE:  Oh, I see.
5          THE COURT:  -- that we would never have some
6  indication of that.  And in this case, it doesn't seem that's
7  exactly what happened, although I don't dispute that your
8  client has been honest about his role.  And I agree with you
9  that he does appear to be just a courier, as far as evaluating
10 what level of responsibility, whether there should be a
11 further reduction.
12       However, I don't believe that in and of itself qualifies
13 someone for minor role, particularly in circumstances like
14 this, where he was involved in multiple events of transporting
15 the drugs and he has prior drug trafficking involvement, and
16 based on the nature and the quantities of the drugs here,
17 which one could reasonably infer were the same types of drugs
18 he brought in those six prior instances, which I would note,
19 too, those six prior instances were in the time period
20 immediately prior to his arrest in this case.  So there is a
21 significant number of trafficking transactions in a very short
22 amount of time, so just to be clear as to why I found the
23 defense hadn't met their burden in this case.
24       But as to sentencing.
25          MR. MARBLE:  Yes.  And this is a good segue to why

1  would he be doing this, Judge.
2      Let me give you a little bit of history about
3  Mr. Rodriguez, Judge.  Mr. Rodriguez has a very significant
4  substance use disorder.  If you look back at his criminal
5  history, we would like to talk about that, because from the
6  late '90s to the early 2000s, the majority, if not -- not
7  quite exclusively his criminal history is drug possession,
8  drug paraphernalia.  He was a user, Judge.  He was an addict.
9  Those caused other little problems.  There's one misdemeanor
10 assault, flight from law enforcement.  And if you'll look
11 closely, the flight from law enforcement also included a
12 charge that was dismissed, which was drug paraphernalia.  I
13 think it's safe to say that those instances of misconduct were
14 related to his using drugs.
15     In 2007, he was sentenced to seven years of prison.  He
16 went to prison on a felony, and I think it's safe to say that
17 that was a more serious offense because his addiction had
18 become more serious and he needed to support his habit, and
19 that's how he was doing it.  He's not proud of that, but I
20 think that's the facts that fit with what the circumstances
21 were.
22     If the Court looks closely, the Court will see that after
23 he was released from prison and paroled in 2013, he started
24 anew.  He's really involved in his family and a construction
25 business.  He started out at the bottom.  Coming out of

1  prison, he didn't have a lot of opportunities, but he's a
2  good, hard worker.  He likes construction work.  He was able
3  to work hard, do quality work, and he moved up.  He started
4  his own business.
5       Unfortunately, everything in his life kind of came
6  crashing down in 2020, Judge, when he learned in March of that
7  year that he has congestive heart failure.  He didn't know how
8  to react to the news.  He was anxious, stressed, devastated,
9  lost.  I don't -- there's any number of words that describe
10 his feelings.  From his own words to me, he didn't know what
11 to do.  He didn't know how to react to this.  He was worried
12 about himself, his family, and his children, and he relapsed
13 and he started making bad decisions again.  There's no one to
14 blame but himself for that, but he wants the Court to
15 understand how he got here today.
16      This offense occurred on February 9th of 2021, Judge, not
17 quite a year from the date that he learned about his
18 condition, and it's been difficult for him.  He's looking at
19 this super, super, excuse me, super, super serious case.  He
20 has a diagnosis regarding his heart that he's been told
21 doesn't give him a lot of time.  What he really wants is the
22 opportunity to have some more quality time with his family
23 because, you know, from the information he has, there's not a
24 lot of time left.
25      And so for that reason, Judge, we would ask the Court to

1  consider a variance.  And I think what we would ask the Court
2  to consider when imposing sentence is how much time -- the
3  medical records, I think, establish the condition, the
4  information he's provided regarding what that means for his
5  life expectancy, the quality of time that he'll have.  He's
6  changed quite significantly since he's been in custody just
7  because of the medication he is taking.  It's a condition that
8  needs monitoring and treatment.  He's not in a position where
9  he can -- and it's a condition I think he should be concerned
10 about, you know, sicknesses because of how it could affect
11 him.  He's been in custody for a little short of 11 months,
12 and he's hoping, he's optimistic and hoping he can get out to
13 see his family and spend some more time with them.
14      Whatever the Court decides, there is an added level of
15 deterrence of supervised release that the Court can impose on
16 him.  I don't think he's going to be a risk to the community
17 because of, from what little I know, he's going to
18 deteriorate.  He's not going to get better.  He is not going
19 to be in a situation where he can get better, and I think
20 that's very, very somber.
21      I would note, I want to make one clarification to the
22 Court of kind of procedurally how we got here, and that was
23 the decision that we made jointly.  The United States -- I
24 know safety valve is no longer at issue, but I just want to
25 clarify for the Court because I do want to make a plea for

1  disparity, a disparate sentence, based upon the decision we
2  made, and that was that *United States versus Eric Lopez* came
3  out in early May of 2021, Judge.  At the time he pled guilty,
4  in late, I believe in September of 2021, it was still
5  uncertain what the circumstances of that case, the
6  ramifications and how long it was going to be on the books, if
7  you will, because I do think it's pending potential en banc
8  review at the Ninth Circuit.
9      And so out of concern and safety to keep his right to
10 appeal and the uncertainty of safety valve, considering his
11 criminal history, he decided to plead open to all the counts.
12 I don't think he would have done it for any other reason,
13 because there was an issue with safety valve based upon the
14 circumstances, and so that -- but I think that he's pled
15 guilty, he's accepted his guilt.  I think he could be
16 considered for an additional variance based upon the
17 circumstances regarding that case and the decision he made.
18     Really, the right to appeal, for his situation, was kept
19 with the concern about safety valve, and that's why he decided
20 to plead guilty to the indictment as opposed to the
21 government's plea offer.  So I wanted the Court to be aware of
22 that circumstance.
23     Judge, we leave it in your hands.  I know the
24 recommendation of the government and Probation is 120 months.
25 Sincerely, I think that is significantly too much time, given

1  his circumstances of his health condition, given the
2  information that we presented regarding what that means for
3  his future.  We understand how significant this case is, what
4  the drugs do to the community.  There needs to be a level of
5  deterrence, but I also think there needs to be some
6  understanding to his unique circumstances, Judge.  And for all
7  those reasons, we submit to the Court.
8             THE COURT:  Thank you, Mr. Marble.
9        Mr. Rodriguez, is there anything you want to say?
10            THE DEFENDANT:  Yes, Your Honor.  I hope you don't
11 mind, I wrote it down because I didn't want to draw a blank.
12            THE COURT:  That's fine.
13            THE DEFENDANT:  So these are my words.
14            THE COURT:  If you're going to read it, I'm just
15 going to ask if you'll read it slowly and clearly.
16            THE DEFENDANT:  Yes, ma'am.
17            THE COURT:  Thank you.
18            THE DEFENDANT:  Good morning, Your Honor.  I thank
19 the Court for the opportunity to speak, and in doing so, I
20 would like to express my most sincerest apologies for the
21 crimes I have committed.  I take full responsibility for what
22 I have done.  I made some very stupid choices based on a
23 medical diagnosis I received in March of 2020 in which I got
24 diagnosed with congestive heart failure, an enlarged heart
25 with a low ejection fraction.  And as a result of that, my

1  life expectancy is between three to five years from the date
2  of my diagnosis.
3      Prior to that, I was a qualifying party for a remodeling
4  company in which I employed up to 12 people at one point.  I
5  was a productive member of society.  I have had good bouts of
6  sobriety even though I've struggled with a drug addiction
7  since an adolescent.
8      I understand the severity of my actions, for I myself am
9  a victim of the same drugs.  They now hold an expiration date
10 on my life.  I am truly sorry for what I have done.  I am
11 sober now and I truly believe -- I'm sorry.  I am sober now
12 and I truly believe there is nothing that can happen to cause
13 me to stumble.
14     The dissolution of my company, my medical diagnosis, my
15 life expectancy, and the dissolution of my marriage all
16 happened within months of each other.  I truly detest these
17 drugs.  I truly detest my addiction.  If given the
18 opportunity, I do feel my sobriety is where it needs to be
19 now.  I beg the Court for leniency so I can spend time with my
20 family, my loved ones.  What scares me the most is a sentence
21 that would ensure my death in prison due to my life
22 expectancy.  I sincerely beg the Court for an opportunity.
23     Thank you, Your Honor.
24         THE COURT:  Thank you, Mr. Rodriguez.
25     Mr. Eltringham.

1          MR. ELTRINGHAM:  Thank you, Your Honor.

2      Your Honor, while the government is sympathetic to the

3 defendant's physical diagnosis, this is a serious offense.

4 And as the Court noted, the defendant made multiple choices.

5 It wasn't just one choice.  This was multiple choices.  Each

6 time the defendant chose to transport controlled substances

7 across the border was an independent choice.

8      When he was caught on that day with the 9.2 kilograms of

9 methamphetamine and the 1.1 kilograms of fentanyl, the 88

10 grams of cocaine, that's what ended all of this.  But as the

11 Court noticed, and the government would ask the Court to take

12 notice of, is the six prior times when there were anomalies in

13 there.  The anomalies are there, and the government agrees

14 with the Court that it's a reasonable inference that there

15 were additional drugs in the passenger seat at the time where

16 these drugs were located.

17      The concern the government has not only is the type of

18 drugs and the quantity of drugs, typically users, in the

19 government's experience, the users will sell portions of the

20 drugs in order to support their habit.  These aren't

21 street-level quantities.  These are distribution-level

22 quantities of these three drugs, and that is the greatest

23 concern for the government is the amount of drugs that have

24 been moved.

25      We understand and we appreciate that the defendant has

1  accepted responsibility for his actions.  We understand their
2  position for pleading without the benefit of a plea agreement.
3  We are not suggesting that they should be punished for that.
4  It was a decision they made, and it made sense given the state
5  of the case law.  However, the government is still
6  recommending 120 months.  When looking at all the factors
7  under 3553(a), it is the government's position that 120 months
8  is an appropriate sentence.  Thank you.
9        THE COURT:  Thank you, Mr. Eltringham.
10     All right.  I have considered the 3553(a) factors and the
11 information presented.
12     I note, first of all, the nature of the offense and the
13 seriousness of it, the number of transactions and the fact
14 that Mr. Rodriguez has a prior conviction for drug trafficking
15 for which he received a significant sentence.  I note that
16 he's accepted responsibility and also his health issues.
17     I do think that a sentence in the range, or even 120
18 months, is greater than what most defendants would receive
19 under these circumstances for these types of drugs.  Usually
20 you see a sentence of 120 months based on a mandatory minimum
21 or because somebody is a supervisor or organizer.  I'm going
22 to take that into account in determining the appropriate
23 sentence as well as Mr. Rodriguez's health issues.  I'm going
24 to grant a slight variance to take into account those
25 disparities and Mr. Rodriguez's health issues but also noting

1  that this is a continuation of drug trafficking activity and
2  his substantial involvement.
3       I'm going to order, Mr. Rodriguez, that you be committed
4  to the Bureau of Prisons for 84 months.  That's per count,
5  those terms to run concurrently.
6       I'm going to order that as to Counts One, Three, Four,
7  Five, Seven, and Eight that you be placed on a term of
8  supervision for 60 months following the term of imprisonment,
9  and for Counts Two and Six that you be placed on a term of
10 supervision for 36 months.  I'll order that all terms of
11 supervision run concurrently.
12      There's a mandatory $100 special assessment for each of
13 the counts, for a total of $800, that the Court will also
14 impose.
15      The Court finds Mr. Rodriguez doesn't have the ability to
16 pay a fine, and I'll order that a fine be waived.
17      Mr. Rodriguez, do you understand your sentence?
18           THE DEFENDANT:  Yes, ma'am.
19           THE COURT:  If you believe that the Court has made an
20 error, you do have a right of appeal.  To preserve your appeal
21 rights, you're required to file a notice of appeal within 14
22 days of today's date.  Counsel would be appointed to represent
23 you during the appeal process.
24      Do you understand your appeal rights?
25           THE DEFENDANT:  Yes, Your Honor.

1      THE COURT:  Mr. Marble, is there a request for
2 recommendation for designation?
3      MR. MARBLE:  I think Mr. Rodriguez would like to
4 remain in the state of Arizona, Your Honor.  Also, for the
5 record, I would ask that, based upon his longstanding
6 substance use disorder, that the Court consider a
7 recommendation for the RDAP program in prison.
8      THE COURT:  All right.  I'll make a recommendation
9 for RDAP and for placement in Arizona based on Mr. Rodriguez's
10 community contacts here.
11   Mr. Rodriguez, when you've completed the term of
12 imprisonment and you start that term of supervision, upon your
13 release from imprisonment, you're required to report to the
14 nearest probation office within 72 hours.
15   As far as your conditions of supervision, you're required
16 to comply with the standard conditions of supervision adopted
17 by the Court in General Order 17-18, and then I'm going to
18 impose each of the special conditions that are listed in the
19 report as well.
20   Do you have any questions about your term of supervision?
21      THE DEFENDANT:  No, Your Honor.
22      THE COURT:  You understand that if you violate any of
23 those conditions that the supervision could be revoked and
24 that you would be placed on another term of imprisonment?
25      THE DEFENDANT:  Yes, Your Honor.

```
 1          THE COURT:  All right.  Counsel, is there anything
 2  further?
 3          MR. MARBLE:  No, Your Honor.
 4          MR. ELTRINGHAM:  No, Your Honor.
 5          THE COURT:  All right.  We'll stand at recess.
 6      Good luck to you, Mr. Rodriguez.
 7          THE DEFENDANT:  Thank you, ma'am.
 8      (Court recessed.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                         C E R T I F I C A T E

2

3          I, Aaron H. LaDuke, do hereby certify that I
4  reported the foregoing proceedings to the best of my skill
5  and ability, and that the same was transcribed by me via
6  computer-aided transcription, and that the foregoing pages
7  of typewritten matter are a true, correct, and complete
8  transcript of all the proceedings had, as set forth in the
9  title page hereto.
10          Dated this 10th day of May, 2022.

13                             _____s/Aaron H. LaDuke_____
                               Aaron H. LaDuke, RMR, CRR
14                             Official Court Reporter